IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2017

**STATE OF TENNESSEE v. HENRY DARNELL TALLEY**

**Appeal from the Criminal Court for Davidson County**
No. 2014-A-91       Steve R. Dozier, Judge

———————————————

**No. M2016-01632-CCA-R3-CD**

———————————————

The Defendant, Henry Darnell Talley, pleaded guilty to attempted first degree premeditated murder, employing a firearm during the commission of a dangerous felony, reckless aggravated assault, reckless endangerment, convicted felon in possession of a weapon, and violation of an order of protection. The plea agreement provided sentences for all of the convictions except for the attempted first degree murder conviction which was to be determined by the trial court. Following a sentencing hearing, the trial court ordered the Defendant to serve twenty-three years for the attempted first degree murder conviction. The trial court also ordered partial consecutive sentencing, resulting in a total effective sentence of thirty-three years. The Defendant appeals, asserting that the twenty-three year sentence imposed is excessive. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

C. Dawn Deaner, Public Defender, Jeffrey A. DeVasher (on appeal), and Kevin J. Griffith (at hearings) Nashville, Tennessee, for the appellant, Henry Darnell Talley.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Glenn R. Funk, District Attorney General; and Jennifer M. Charles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant entering a Nashville retail store on September 4, 2013, and opening fire on the mother of his child. The Davidson County Grand Jury

indicted the Defendant for attempted first degree premeditated murder, employing a firearm during the commission of a dangerous felony, reckless aggravated assault, burglary, reckless endangerment, felon in possession of a weapon, and violation of an order of protection.

On October 10, 2014, the trial court ordered the Defendant hospitalized at Middle Tennessee Mental Health Institute after finding him incompetent to stand trial due to mental illness. On October 1, 2015, the trial court ordered a forensic evaluation on the Defendant's competency to stand trial.

On June 6, 2016, the Defendant entered a plea agreement with the State to resolve the charges as follows:

Count 1: Attempted First Degree Premeditated Murder – Sentence to be determined by the Court.

Count 2: Employing a Firearm During a Dangerous Felony - 10 years/consecutive to Count 1

Count 3: Reckless Aggravated Assault - 4 years/ concurrent with Count 1

Count 4: Dismissed at State's Request

Count 5: Reckless Endangerment – 2 years/ concurrent with Count 1

Count 6: Felon in Possession of a Weapon – 2 years/ concurrent with Count 1

Count 7: Violation of an Order of Probation – 11 months and 29 days/ concurrent with Count 1

The State offered the following factual basis to support the trial court's acceptance of the Defendant's guilty pleas:

Had the parties gone to trial on [the Defendant] case number 2014-A-91, the State anticipates the facts would have revealed that on September the 4th, of 2014, [the Defendant] drove to the Value Vision Eyewear Store

2

located in Rivergate here in Davidson County. He drove a maroon Pontiac and parked the car in the parking lot.

. . . .

Previous to this day July, 2013, the child's mother, Ronkeisha Briley had obtained an order of protection banning [the Defendant] from contacting her or coming to her work place. That day [the Defendant] was armed with a .45 caliber pistol, which he was prohibited from owning due to his prior felonies of manslaughter, and felon in possession of a weapon. He walked into the store that day with the gun tucked in his waistband intending to kill Ronkeisha Briley who was working her shift.

He proceeded up to the counter where she was on the phone and asked where he could get his glasses repaired. She motioned to the middle of the store. He stood there watching her until she got off of the phone and then said under his breathe that she was being disrespectful. He then pulled the gun from his waistband and shot her at point blank range as she stood at the counter.

Standing next to her was employee Brittany Barbee who began to scream and pulled Ronkeisha Briley up off of the floor and they both ran down a hallway into the pretest eye exam room. Following behind was [the Defendant] with the gun. The two wom[e]n crouched down bellow [sic] a table in the pretest room [ ] and [the Defendant] stood over them continuing to shoot. Ms. Briley was shot an additional three times and the bullet grazed Ms. Brittany Barbee's leg wounding her.

[The Defendant's] gun began to make a clicking noise and it had jammed. Employee Neal Knight looked around the corner and saw [the Defendant] with the gun in his hand and got a clothing description which matched Ms. Briley's and Ms. Barbee's description. [The Defendant] was wearing blue jeans and a checkered blue and green shirt that day.

[The Defendant] then walked out of the room and left the store where employee William Bolster was watching him as he got into the maroon Pontiac. Employees and customers began to run out of the store, some of them calling 911 giving descriptions of [the Defendant]. Customer

3

Marcus Rowe stayed on the phone with 911 as he gave a description of the car [the Defendant] got into.

As Ronkeisha Briley lay on the floor in the pretest room, she managed to walk down a hallway, in which she collapsed in the doorway. Employee Neal Knight and Brittany Barbee tended to her injuries until police arrived.

When police eventually got there, Ms. Briley made statement to Officer Joe Pennington (phonetic) that -- that it was her child's father who had shot her. Paramedics arrived and Ms. Briley passed out from internal bleeding on the way to Vanderbilt Trauma Center. Officers Pile and Jonathan Weaks received the 911 call and had driven up behind the maroon Pontiac as [the Defendant] slowly did donuts around the parking lot in his car looking at his passenger seat.

He then pulled out of the parking lot with the officers behind him and pulled on to Gallatin road [sic] stopping in front of the olive guardden [sic]. The officers watched as he took the .45 caliber pistol and shot himself once in the chin. The bullet exited his -- the bridge of his nose and blew out through the sunroof.

The officers drew their guns and approached to tell [the Defendant] to get out of the car with his hands up. [The Defendant] followed their instructions and they handcuffed him and retrieved the gun that was lying in the floorboard of the driver's seat.

TBI agent -- special agent Terry Arnie did a ballistics comparison on the gun that was found in [the Defendant]'s Pontiac, and the shell cases that were found inside the Value Vision. She determined the casings were fired from that gun . . . the bullets with those casings were fired from that gun. [The Defendant] was responsive, could communicate with the officers an [sic] was able to nod and shake his head at their questions despite missing his jaw.

He was then taken to Vanderbilt trauma center. Ms. Briley had four operations and continues to have lasting health issues to this day. [The Defendant] was charged with reckless aggravated assault due to the injuries that Brittany Barbee received with his gun. He was charged with reckless

4

endangerment for placing Neal Knight and all of the other Value Vision employees as well as the customers in the zone of danger with the firearm.

He violated the order of protection by coming into the place of business where Ronkeisha Briley was work[ing]. And he employed a firearm and discharged the weapon during the commission of an attempted first-degree murder of Ronkeisha Briley.

The trial court advised the Defendant of the charges against him, the rights he waived in entering a guilty plea, and reviewed the plea agreement with him. The Defendant entered a plea of guilty to the offenses.

The trial court held the sentencing hearing on July 8, 2016. The parties agreed that the Defendant was serving a probation sentence at the time of this offense, and the trial court entered the presentence report into evidence at the State's request. Ms. Briley testified that she and the Defendant began their "off and on" relationship in 2006. She described the relationship as marked with physical, verbal, and sexual abuse. She stated that "the assaults" occurred in 2011 and '12" and the sexual assaults occurred in 2013. On two occasions, Ms. Briley contacted the police but on other occasions, she did not.

Ms. Briley testified that since the shooting, she had received unwanted contact, via letters and phone calls, from the Defendant. She notified the District Attorney's Office as well as other state agencies and eventually the contact discontinued. Ms. Briley identified letters that the Defendant had sent her. In the letters, the Defendant calls Ms. Briley derogatory names but also "forgives" her for "cross[ing] a king." Ms. Briley said that she was unaware of any mental illness diagnosis for the Defendant.

Ms. Briley testified that the Defendant shot her four times. She underwent two or three surgeries and remained in the hospital for about four weeks. After release from the hospital, Ms. Briley still required help. Ms. Briley stated that she was involved in ongoing counseling and had been diagnosed with Post-Traumatic Stress Disorder.

Neal Knight, a Vision Works employee present on the day of the shooting, testified that he heard the gunshots but "wasn't sure what it was." He hid a patient underneath a desk and stood by "the side wall." He saw Ms. Briley run down the hallway with blood on her blouse. She was trying to get into one of the doctors' offices, but they were locked. She then ran to an exam room. After a period of silence, Mr. Knight stepped into the hallway, looked toward the waiting area, and saw the Defendant. Mr. Knight stepped back into his previous position and waited. At some point, someone

5

called out, "He's gone," and Mr. Knight rushed to the exam room and applied pressure to one of Ms. Briley's gunshot wounds. Mr. Knight still experienced residual anxiety from the event especially when in public places.

The trial court entered, at the Defendant's request, Vanderbilt Hospital medical records detailing the Defendant's injuries at the time of arrest, a report from the Mental Health Cooperative detailing services provided to the Defendant while he was in custody, and the forensic findings portion of the forensic evaluation of the Defendant.

The trial court stated that it had considered the presentence report, the submitted reports, and the sentencing purposes and considerations pursuant to the Sentencing Act. It noted that the agreed upon sentencing range for the attempted first degree murder conviction was eighteen to twenty-three years. The trial court then considered enhancement and mitigating factors. The trial court found enhancement factor (1), that the Defendant had a history of criminal convictions and behavior. T.C.A. § 40-35-114 (2014). In so doing, the trial court noted the Defendant's prior convictions for domestic violence involving the same victim, a conviction for felon in possession of a weapon, and a prior homicide conviction. The trial court also noted that he found Ms. Briley's testimony regarding their history of abuse credible and considered the assaults in terms of criminal behavior. The trial court also found applicable enhancement factor (8), that the Defendant had previously failed to comply with conditions of release into the community relying upon the Defendant's two prior convictions for violating his probation. *Id*. at (8).

The trial court applied enhancement factor (9), finding that the Defendant employed a weapon during the commission of this offense. *Id*. at (9). It noted that he used the gun multiple times. Next, the trial court applied enhancement factor (11), that the Defendant had a prior felony conviction for voluntary manslaughter that resulted in serious bodily injury. *Id*. at (11). Finally, the trial court applied enhancement factor (13), that the Defendant was on probation at the time of this offense. *Id*. at (13).

The trial court then considered mitigating factors. The trial court considered the Defendant's mental health issues in terms of a mitigating factor. The trial court stated that, although the Defendant's diagnosis of bi-polar disorder did not rise to the level of being a defense to these crimes, it found that it was applicable in terms of mitigation. However, the trial court did not give this factor much weight in light of the facts and circumstances surrounding the offense.

The trial court noted that this was a "worst case scenario for domestic violence," noting that the Defendant had been told numerous times to stay away from Ms. Briley

6

and yet appeared at her place of work and shot her four times. The trial court expressed concern about the safety of Ms. Briley as well as others. The trial court concluded that a lengthy incarceration was "the only way to" . . . "ensure [the] safety component of these laws," and imposed a twenty-three year sentence for the attempted first degree premeditated murder. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court's imposition of a twenty-three year sentence is excessive. Specifically, he contends that the trial court erred in applying one statutory enhancement factor and should have applied one additional statutory mitigating factor. The State responds that the sentence is in the appropriate range and in compliance with the purposes and principles of the Sentencing Act; therefore, the trial court acted within its discretion. We agree with the State.

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence and the manner of service of that sentence. In *State v. Bise,* the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. 380 S.W.3d 682 (Tenn. 2012). The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *Id*. A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

Thus, the reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id*. at 707. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* T.C.A. § 40-35-114 (2014); *see also Bise*, 380 S.W.3d at 699 n. 33, 704; *Carter*, 254 S.W.3d at 343. We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

8

The Defendant argues that the trial court should not have applied enhancement factor (11), providing for enhancement in offenses involving a felony resulting in serious bodily injury where the defendant has previously been convicted of a felony involving death or serious bodily injury. T.C.A. § 40-35-114. He argues that because death or serious bodily injury is inherent in the offense of attempted first degree murder, this factor should be inapplicable. The Defendant also argues that the trial court should have considered the Defendant's mental health within mitigating factor (8), which provides, "[t]he defendant was suffering from a mental or physical condition that significantly reduced [his] culpability for the offense" rather than the "catch-all" provision (13).

After review of the record, we conclude that the trial court did not abuse its discretion when it sentenced the Defendant. Even were we to agree with the Defendant's contention that the trial court misapplied enhancement factor (11) and the trial court should have considered the Defendant's mental illness pursuant to mitigating factor (8) rather than (13), the Defendant would still not be entitled to relief. The trial court found applicable four other enhancement factors not contested by the Defendant, leaving a more than adequate basis for enhancement. Furthermore, as we earlier stated, misapplication of an enhancement or mitigating factor alone does not invalidate the sentence. The Defendant agreed to a sentencing range of eighteen to twenty-three years. The trial court imposed a within range sentence that is consistent with the purposes and principles of the Sentencing Act.

The Defendant also argues that the trial court's imposition of the maximum sentence allowable is greater than that deserved for the offense committed. We do not agree. The Defendant, who had a history of physical, sexual, and verbal abuse of Ms. Briley, had been ordered not to have contact with the victim. Despite the order of protection, the Defendant entered, armed with a gun, Ms. Briley's place of work, a retail store where there were customers and other employees present. He approached Ms. Briley and shot her. After a co-worker helped Ms. Briley flee from the Defendant to a room down the hall, the Defendant followed Ms. Briley and shot her three more times causing injury to the co-worker as well. Even after his arrest for shooting Ms. Briley, the Defendant continued to contact Ms. Briley through phone calls and mail. Based upon these facts, the trial court did not impose a sentence greater than deserved for the offense committed.

Accordingly, we conclude that the trial court clearly stated its reasons for the sentence imposed, and the Defendant's sentence is within the appropriate negotiated

9

range. It is apparent that the trial court considered the purposes and principles of the Sentencing Act and did not abuse its discretion. The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE